The United States Court of Appeals for the Ninth Circuit is now in session. Thank you. Good afternoon. This is the time set for oral argument in re-hearing en banc the case of Matthew Brach v. Gavin Newsom. We are ready to hear from the appellate. Thank you, Chief Judge McGeehan. May it please the court. Robert Dunn for plaintiff's appellants. Like to try to reserve seven minutes for rebuttal. I'll do my best. This appeal, which involves a challenge to defendants' destructive school closure orders, raises several important issues. But for this argument, I would like to focus initially, at least, on those issues presented in the states and bank petition that brought us here today. Specifically, I'd like to explain why the case is not moot still today, why this court can and should reach the merits of our Meyer-Pierce argument, why defendants' school closure orders infringe the core of parents' substantive due process right recognized in Meyer and Pierce to direct the upbringing and education of their children, and why that infringement must be subject to strict scrutiny, which the state cannot satisfy, if that's all right. So first, the case is not moot. Although everyone agrees, plaintiff's schools are not currently subject to a statewide closure order, this case falls squarely within the voluntary cessation exception to mootness. That's because the defendants lifted the prohibition on in-person education before this case could be fully litigated, not only before this panel, but before the merits panel initially. And defendants cannot carry their burden, their heavy burden, of showing that it is absolutely clear that the challenged restrictions will not recur or be reimposed. Now, the state contends that this doctrine doesn't even apply because the state didn't lift the policy. The counties just moved out of tier one. But as the panel opinion, I think made clear on this point, the blueprint was entirely a creation of the defendants in this case. They implemented it. They repeatedly changed it. They then repealed it and replaced it with something else and maintained control over it at all times. And all of those updates and repeals were effectuated simply by updates to the website. So if you wanted to know what the rules were at any given time, you had to look on CDPH's website. And if the website was updated, the rules governing school closures changed. So this is not a situation where, you know, some third party has taken action to moot the case. The legislature has not passed a statute prohibiting CDPH from closing schools. This is not a situation where plaintiffs have moved out of state or no longer have kids who will go to school. All of them are still parents of school age children. Nor is it a situation, as the court has found many times, where the state has admitted wrongdoing or the government actor has admitted wrongdoing in changing its policy. Here, quite the opposite. In fact, the state continues to insist that its school closure orders were justified, were constitutional, and it even took the extraordinary step of petitioning this court for in-bank rehearing after having essentially admitted that, you know, any relief the district court would issue wouldn't have a, you know, significant infringement on the state's ability to do what it wanted to do. It nevertheless sought in-bank rehearing here precisely to defend the constitutionality of its conduct. So the state has not abandoned in any respect, you know, its position on the merits of the underlying argument. And this court has repeatedly said that where an executive action that is not governed by any clear or codified procedure is made, that cannot move a claim. The court said that in McCormack, which was cited in our brief. And that is the position. Mr. Dunn, can I ask you a question? Absolutely. We know that COVID-19 is a dynamic virus. Yes. But what basis do you have to suggest that there's a reasonable expectation that the state will adopt new orders, requiring schools to revert to distance learning? The fact that the state hasn't adopted those kinds of orders in response to the Omicron variant, should that not inform us on this question? Your Honor, I think the fact that the state has not reimposed statewide closures under the current surge is certainly a data point. It is a factor that would go into the analysis, but it can't be dispositive. According to CDPH's own policies that they put in place in July, schools were designed to be closed to prevent community spread and to protect hospitals. Now, if that was the rationale, that rationale clearly applies today. When they closed schools in July of 2020, there were roughly 7,000 people in California in the hospital with COVID-19. Today, there are over 15,000 people. So the health situation is objectively more serious today than it was even then. Now it's true, the state has not responded by immediately closing schools. But as we pointed out in our 28J opposition, schools are closing. There has been pressure from teachers unions and school districts to close schools. And that too is very similar to what was happening in July of 2020. So while, you know, we're not here to say that the governor is going to close schools tomorrow, what we are here to say is that it is not absolutely clear that that won't happen, especially if this case were to vanish. You know, this is not absolutely clear. Does that mean there's a reasonable expectation? Well, in the voluntary cessation doctrine, the court has held that, you know, the government has the burden of proving that it is not absolutely clear. And at times the court brings in the capable of repetition doctrine language of whether it is there's a reasonable expectation that it will recur. But at least in voluntary cessation cases, the standard is really that it's absolutely clear. Now we would still argue, yes, there is a reasonable expectation for the reasons I mentioned. The health situation continues to be significant. And the state has never revoked any of the powers that would otherwise give us comfort. So for example, this would be a different case if the governor had revoked the state of emergency. You know, that was the situation in the two decisions that the state presented in their 28-J. So this would be a different case if that if that had happened. But that hasn't happened. So we're still in a world where CDPH has unfettered authority to close schools. It could do it tomorrow. Thank you, Mr. Dunn. Judge McEwen? Yes. Good afternoon, Mr. Dunn. It seems to me you've acknowledged that we are in a very different case than the one that you brought under the 2021. So we're in a situation now where, echoing what Chief Judge Morvia said, there is obviously a dynamic situation with COVID. But this 21-22 guidance specifically says in-person learning, even if the pandemic dynamics shift. And I really have two questions. I'm concerned that the standard you impose would mean that the state's burden is literally almost beyond a reasonable doubt that something wouldn't change to change that directive. But more importantly, why isn't this like the Third Circuit case in Butler where there's really not invocation of the voluntary cessation doctrine because the original order expired? That is not the order that we're dealing with now. And we're dealing with an order that says it doesn't matter if dynamics shift, schools are open and the governor reaffirmed that as recently as the end of December 2021. Well, here's what I think makes it distinguishable is that while we do have a statement from CDPH that it doesn't plan to close schools, that same guidance says very specifically that it is going to monitor the situation, that it's going to maintain flexibility. And the agency has never absolutely forsworn it. It has never put out any declaration saying under no circumstances will be closed schools. I think there is a desire on their part to keep schools open. But as this court said in Bellevue City of Boise, even if the government actor has an to recur, if there is no external barrier preventing the policy from being reimposed, the case isn't moved. And I take your point that the court shouldn't issue a decision that makes it impossible for the government to ever prove mootness. But here, again, where the state of emergency continues to exist, where all of the relevant health concerns continue to exist, and where the agency has a history of shifting and moving and bobbing and weaving, all of those factors, in our view, suggest that the case should not be moved. Well, do you agree that the question of whether the voluntary cessation doctrine even applies in the first place is distinct from this burden issue, which you're now just addressing? Well, to say that, you know, the only issue is whether or not the blueprint that was in 2021 has been lifted. I think that's too narrow of a focus. The real issue is, will the state reclose schools? And whether it does that through the blueprint or through another order, an ad hoc order, that's the relevant problem here. Because it wouldn't matter if the court or if, you know, if CDPH had issued a series of, you know, one-month school closures, that wouldn't affect the mootness analysis if you got three months in and said, oh, well, you know, the one that was three months ago is gone. The question is, could the state take the same action today? That's our position. Thank you. Judge Wardwell. Thank you, Chief Judge Merguia. Since Chief Judge Merguia and Judge McEwen covered my first two questions, I will ask you to shift to the merits argument that you're making at this time. I believe Judge Hurwitz pointed out that you did not make the particular Meyer-Pierce claim either in your complaint or in arguments below to the district court. Why haven't you waived or forfeited that argument? A couple of responses to that, Your Honor. First, I think it's clear that we didn't waive the argument or waive the claim, I should say. So the claim is a substantive due process claim arising from the 14th Amendment. That claim was clearly asserted. Right, you know, counsel, but the claim you asserted in front of the district court was a fundamental right to a basic minimum education. And Myers and Pierce, as it's been interpreted, and as the panel majority read it, and in your argument, I gather, to them was a claim about the right to control what is taught in private schools. I'm not even going into the substance of that particular claim as applied to these facts, but it's a very different claim than the one you allege in your complaint. Right. The point I'm making is that we raised a 14th Amendment substantive due process claim. You know, you don't have to cite case law or necessarily define it. That is a broad claim. That claim would encompass, you know, many different aspects. Now, it is true in the district court, we focused primarily on the claim as applied to the public schools, which is that the state, you know, that there is a right to a basic minimum education, that the state has to provide that right. Though, you know, as Judge Collins pointed out, we repeatedly cited Myers and Pierce. We did note that the state was depriving our plaintiffs of this, you know, ability to obtain an education. And all of the declarations that were provided to the district court from the private school parents make clear that what they're challenging, what they're upset about is that they cannot send their kids to a private school. Not that the state isn't funding it, but that they can't send it to a private school that they have paid for. So that is all very clear. And, you know, beyond that, Your Honor, it's crystal clear. This court has discretion to reach the issue, whether it was perfectly teed up below or not. And given the circumstances of this case, both how it was litigated in the district court on a super compressed timeframe, I think our summary judgment briefing was completed within six weeks of filing the amended complaint. So everything happened on an expedited timeframe. There were multiple other issues in the case besides the ones on appeals. We had to devote time to those as well. And the state, you know, required us to spend a good amount of time arguing over whether Jacobson v. Massachusetts just abrogated the standard of review for every case, which we were ultimately correct about, but had to spend time. But more fundamentally, the claim here that the school closure orders are depriving the school is clearly encompassed within the case that we framed below, right there. We can quibble over whether we perfectly teed it up, should have had subheadings and all of that, but it's clearly encompassed within that claim. And all of the record evidence that we have provided supports the claim. Thank you, Mr. Dunn. Judge Pius. Yes, Mr. Dunn, in your complaint, the first claim for relief, I just want to follow up a little bit on Judge Wardlaw's questions. The Myers Pierce right is the right that belongs to the parents, correct? Correct. Okay. Where in the complaint do you make that allegation? Well, the plaintiffs are the parents in this case, Judge Pius. And they assert a violation of their substantive due process rights as well. If you read it there, I mean, if you read claim one, plaintiffs and their children have a fundamental right to a basic minimum education. It doesn't talk about the right to control where to send their children. Yes, and that's a complaint. And complaints are not required to be nearly as specific when asserting claims. But that language encompasses our claim. Parents do have a right. This wasn't a 12B6 dismissal. This was a summary judgment ruling by the district court, correct? Correct. And, you know, when I read the district court's order and the briefing that he required, I didn't see any of this Myers Pierce argument laid out. No, I think that's correct. I think the district court didn't. It just wasn't a claim that was made. Well, it was a claim that was made. The court didn't focus on it. I think it spent two pages on the due process claim entirely out of its 20. But just to focus on that line in the complaint, you know, from our view, that may be not an elegant way of putting it. But the claim here by the parents is that the state has deprived them of their ability to obtain a basic minimum education from their private school. Now, again, as I noted, we definitely focused more heavily on the district court on the right to a minimum education provided by the state. That was clearly the focus of the district court proceeding. But the issue is, you know, it's encompassed within that. And, you know, it's not like we presented declarations from private school parents that ignored this point. I mean, they clearly were making the point that they wanted to send their kid to a private school and were being blocked from doing it. So that was all in the record before the court. OK, so thank you. Yeah, thank you. Thank you. Judge Berzon. Oh, you're muted, Judge. Berzon. Judge, you're muted. That isn't Judge Gould next. Judge Gould indicated he did not have any questions. So, yeah. Um, so it seems to me that you are articulating the Meyer-Pierce issue now differently than what the, you know, you articulated it in your briefs, even in this court, and differently than the court, than the panel decided it in a way that interacts with the mootness question. Um, that is, I had understood that the argument was simply that as private school parents, they can insist on their children in changing in-person classes. But now you're wrapping in the basic minimum education point as part of that, which was not done, as I understand it, in the panel decision. And to me, it puts much more pressure on the mootness issue. Because my problem with, if the abstract question were, is there a right to attend private school in person, that might be something we could decide without any record and without any particulars. But if we're going to be looking at this basic minimum education point as part of the private school question, then I want to know what time period are we looking at? I mean, are we going to decide what was true in the spring of 2020? When we know that there was an emergent situation in which the schools were really knocked together on how to do this? Or are we going to look at the whole year of 2021? Or are we going to look at the year of 2020? In other words, what's the facts that we would look at to decide whether there was a basic minimum education? Does it make any sense for us to be at a spring 2020 record, either with respect to the state of the pandemic, or the state of the knowledge of how to go about educating children, or may not be in school all the time, or some of the time, or whatever. And related to that is the fact that the pandemic keeps changing. And for example, your position that on the basis of spring 2020 facts, I'm sorry to go on so long, there was no little transmission among children and their record on the Omicron thing. And the media is completely different. We don't have a record on that. So what is supposed to be decided on what record? What's the issue that the voluntary cessation leaves on? Yeah, so there are many different questions embedded in that. Given the way you're now articulating the issue, what are we supposed to decide as having been voluntarily ceased? So in terms of what's voluntarily ceased, it's just the school closure orders. In terms of what is before the court, I think it's just whether summary judgment was properly granted to the resolve all the factual disputes. The original panel didn't do that. It just remanded for further proceedings in light of the clear legal ruling. Now, what I want to make clear, because you raised a good question that I've been thinking about for a while, and that is, you are correct, both in the briefing and in Judge Collins' opinion, the focus is on in-person education. And I do think that is the right way to frame the right in terms of how to write an opinion, for example. I think that is where the focus should be. For this case, what parents were saying is, we want in-person education because that is the only way to obtain a basic minimum education for our kids. And they presented facts on that. And we have a huge record from psychologists and school counselors and teachers that remote learning was not providing the basic minimum education. Now, there are other situations where parents would invoke the same right to an in-person education for different reasons. So the amicus, for example, mentioned the religious aspect of in-person education. And it said, look, you can't get the religious education that you want remotely. It doesn't work. The kids have to be able to be there to go through some of the ritual and the sacraments, the communal learning. Whether you're talking about STEM classes, some parents send their kids, especially here in the Bay Area, to these intensive STEM schools where they're doing robotics labs and types of things that can't be done in person, arts, drama, sports. So I think the in-person focus is correct. Here, how that got tied to the main complaint is that parents weren't focused on any of those issues. They were focused on the fact that they wanted an in-person education because it was the only way to get their kids educated at all. And that's how those intersected. So I take your point. I think that's a good clarification. But in terms of what the court needs to decide, this court doesn't need to decide a factual record today. It needs to remand, and we can hash out whether their rights were violated. Thank you. Judge Aikuda. Yes, I just wanted to hear your explanation about something the opposing counsel raises, which is in your reply memo in the district court, you say that defendants mischaracterize plaintiffs as advocating for a fundamental right to in-person school. And you reject that argument before the district court. And the government says that's actually waiving the Meyer-Pierce claim. Could you give your explanation of that? Yeah, I think that statement right there is clearly responding to the public school aspect of our argument. So with respect to public schools, what we are not saying is that the government has an obligation to provide in-person schooling. You have the right is to the basic minimum education. And there may come a time where Zuckerberg masters the metaverse and our kids can all put on VR goggles and have essentially the same experience in the classroom that they would have in real life. We're not there yet. But that was the point of that is to say, we're not saying that the state has to pay for campuses and buildings and all of that, but it has to provide a basic minimum education. And at least on this record, that cannot happen except for in-person. So that was the point of that clarification is just what are we asking the court to tell the state to do? So how does that apply to private school arguments? Obviously the state isn't providing the education at private schools. Yeah, so what we would say is the state can't bar parents from sending their kid in-person to a school. And that's sort of like the bedrock issue there is the state can regulate all sorts of things around private schools. And the state has put many cases forward where other aspects of private school performance have been regulated. But what it can't do is say, you cannot send your kid to sit in a classroom and learn from teachers. It just can't do that because once you've said that you've more or less eviscerated Meyer and Pierce altogether. It effectively has no meaning, no form or substance. So just to clarify, you're saying your statement rejecting the state's characterization of your argument as advocating for a fundamental right to in-person school. You're saying that only applies to public schools and you never rejected that for private schools. Do I understand that or not? Yeah, that's correct, your honor. Okay, thank you. Thank you. Judge Wynn. My questions have been answered, so I'll pass. Thank you, I've already been answered. Thank you. Judge Nelson. Yeah, for the mootness argument, you focus very much on voluntary cessation. If we were not to agree with you that California had voluntarily ceased this, do you still have a mootness argument under capable of repetition but evading review? We do for the reason we've stated that this case was litigated in nine whole academic year. We don't think it's reasonable that that case could be litigated in a nine month period. And it is certainly reasonable that our kids will be attending school for the next school year. And then I think it collapses into much the same argument of whether it's reasonably likely that the state would do that. For the reasons stated, we think it is reasonably likely. But as I mentioned, I think the straightest path here is voluntary cessation. And then one more question. Can you point me in the record below where you made the argument that the majority in the panel relied upon to say that for the substantive due process argument provided for private school in-person attendance? Well, what we said is state provided or permitted education is implicit. And then we in order of liberty, we cited that. There was a better one that I had here. Where is it? Yeah. So we said in our memo in support of motion for preliminary injunction, that's ECF 13-1 in the district court. Not sure. I don't think that's in the excerpts of record. The history and practice make clear that the deprivation of the liberty that children and their families otherwise would to pursue activities of their own choosing is justified by the importance of education. That was at page 21, 10 to 18. So I don't think, like I said, we didn't focus on the Meyer-Pierce argument below, but we asserted many times that the state cannot bar parents from accessing education for their children. Thank you, Chief Judge McGeehan. Mr. Dunn, to pick up somewhat on some of Judge Berzon's questioning, what is the specific substantive due process right that you're claiming here for the private school plaintiffs? So as the court has explained it, it falls within the right to direct the upbringing and education of children. And as we've explained, that right does have a core that must be subject to strict scrutiny. And what we have said is that within that right, the right to send your kid in person to a private school is just squarely within the right to direct the upbringing and education of your children. Where are you locating the basis for this? Because the Supreme Court has said in this area, we have to use utmost care. This is not a right that's specifically identified in the Constitution. So where are you deriving this from? Well, the substantive component of the due process clause, Your Honor, we would direct you to Washington v. Glucksburg, where the court described this right to direct the education and upbringing of your children as fundamental, as a core component that has been protected by the due process clause. I recognize there's lots of debate over whether there is a substantive component of the due process clause, but the Supreme Court has not yet said otherwise. So that is where we would locate the right. What are the implications of your argument? Because California argues that if you're correct, there's a host of generally applicable health and safety regulations and other types of laws that would essentially fall away as applied to private schools. How do you respond? I think that is a fundamental mischaracterization of what the right is. The whole question in this case is whether the infringement here falls within the core of the right protected. And in all of the cases they cite, Fields v. Palmdale, Brown v. Hot Safe Sexy Productions, the Ohio v. Goff, all of those, what the court decides is the right asserted does not fall with, it is not encompassed by the right to direct the upbringing and education of children recognized by the Supreme Court. So it's really the question the court is always going to have in a Meyer-Pierce case is, does the right asserted fall within the core of the right the Supreme Court has recognized? In this case, the answer is yes. In most cases, it's no. You don't have a right to control the curriculum at your public school and to opt out of mandatory community service programs or uniform requirements. But you do have the right to send your kid in person to a private school under Meyer-Pierce and its progeny. All right. I'd love to reserve the minute 40. Thank you. You have a minute 40, but I will give you three minutes for rebuttal. Thank you. We're now ready to hear from the state. Good afternoon, and may it please the court. Sam Siegel on behalf of the state defendants. Plaintiffs asked this court to reach an unprecedented conclusion that parents have a fundamental right to insist on a particular mode of education, in-person instruction. But there's no need for this court to decide that question because this case is moot and that claim was forfeited. The state returned to its traditional preference for in-person instruction more than six even as cases have risen and fallen. This change in approach is grounded in a fundamental shift in the state's response to the pandemic. When the orders challenged here were first adopted, we knew little about this deadly and highly contagious disease, and we had few tools to combat it except for keeping people apart. But now we have vaccines that are available to adults and children. We have several treatment options, and we have 22 months of data demonstrating that COVID-19 poses less of a risk to children than we initially feared. These changed circumstances allowed most schools, including the plaintiffs, to reopen without the threat of closure by last April. They allowed the state to rescind its restrictions on in-person instruction altogether by last July. And as several members of this court have noted today, they allowed the state to maintain its commitment to keeping schools open even though new variants have pushed cases higher than ever before. The state's actions and its words demonstrate that there's no reasonable expectation that it will return to the restrictions on in-person instruction challenged here. But if this court disagrees, it should not reach a claim that was forfeited. As Judge Acuda noted, in the district court, plaintiffs expressly argued that they were not advocating for a fundamental right to in-person instruction, and they made no distinction between the private and public plaintiffs in the portion of the brief that Judge Acuda referred to. And before the three-judge panel, and again today, plaintiffs recognized that they did not perfectly tee this claim up for the district court. So there's no need for this court to test the limits of the substantive due process clause in this case. But if the court decides to reach the merits, it should reject plaintiffs' claims. Plaintiffs' sweeping redefinition of the Meyer-Pierce right cannot be reconciled with this court's or the Supreme Court's repeated admonitions that the rights recognized by those cases are limited in scope. Instead, Meyer-Pierce protects two discrete education-related interests, a parent's right to choose a private school education over a public school education, and a parent's right to select a private education that includes a specialized curriculum. California's time-limited restrictions on in-person instruction did not violate either right. Throughout the pandemic, plaintiffs have been free to choose whatever school education they wanted for their children, including a private school education that offered particular instruction. Meyer and Pierce entitled them to nothing more. And plaintiffs' broad expansion of Meyer-Pierce would call into question a wide range of generally applicable laws, including building safety codes and orders to shut down schools in response to natural disasters. Chief Judge Murguia, I welcome the court's questions. Thank you. Judge Press. Thank you, Chief Judge. I'd like to return to the question of mootness. I take it you agree that the state still has the legal authority under the emergency orders to reissue or re-enter the school closures if it determines that's necessary? Yes, Your Honor, but the mere fact that we retain that authority does not save this case from few challenges to government action would ever be held moot. Instead, the relevant question is whether there's a reasonable expectation that the state is going to impose these restrictions again. And on that score, the most powerful evidence that we have is what the state has actually done, maintained its commitments to keeping schools open, even as we have seen COVID-19 case rates rise and fall. How do you respond, notwithstanding that commitment at present time, how do you is ever-changing and unpredictable, perhaps evidenced by the fact that we're doing this argument remotely and that we cannot tell what will happen in one month or three months with the health situation that's confronted all of us? By looking at what California has actually done, maintained its commitment to keeping schools open, even as we have seen case rates rise. Even so, the Supreme Court has said for this particular aspect of mootness, you have a, I think it's a formidable burden. Why do you think you've met that burden here, given just the history of COVID regulation over the last two years involving schools? We've met that here principally because what we have done, maintained our commitment to keeping schools open over the course of the last six months. But more broadly, Your Honor, in Rosebrook, this court identified five factors that had looked to in assessing whether or not other challenges to government regulations were moot. Here, almost all of those factors are present, including the fact that we haven't returned to our restrictions and that the change in policy was made in broad and unequivocal terms, both when we rescinded our restrictions last July and then more recently in the governor's December 2021 statement and his recent executive order in which he broadly and unequivocally reaffirmed his commitment to keeping schools open. Thank you. Thank you. Judge Nelson. Yeah, you mentioned Rosebrook, and I wanted to just point you to some language there where we said that a case is not easily mooted where the government is otherwise unconstrained should it later desire to reenact the offending provision. That seems to me to apply pretty forcefully here where you could reinstitute these same prohibitions tomorrow if you wanted to. Your Honor, we don't read Rosebrook as saying that merely because there could be a change in policy that saves a case from mootness. Indeed, if that were the case, then the case in Rosebrook could not have been held moot because the government retained the authority to change and go back to its lax enforcement policy. Or in America, cargo transport. The government retained the authority to change its interpretation of the regulation. Or in the Supreme Court's decision in Trump v. Hawaii, the president retained the authority to impose a similar executive order restricting certain individuals from entering this country. Indeed, there are a number of instances in which there have been changes in policy announced through executive orders, and the court has held that the case was moot, including I think Rosebrook is the most notable one. There, the change in policy was announced through an email. Here, you have a full rescission of the executive under which we had restricted in-person instruction, as well as the other factors that I've been talking about today. I think powerfully demonstrate that the state, or at least there's no reasonable expectation that the state, will return to the policies challenged here. Well, what's your response to the Supreme Court that seems to have held in a number of cases, or at least suggested in a number of cases, that these COVID restriction orders are not moot just because they're changed? Wouldn't that apply with Equal Force here? We don't read Camden or Roman Catholic Diocese in that way, and I think those cases are distinguishable on a number of grounds. The most important one is, in this case, you have a six-month track record of the state rescinding its restriction and not going back to that change in policy. But more importantly, your honor, that's not how the First, Third, or Fourth Circuits have read Camden or Roman Catholic Diocese. In at least the Boston Bit Labs and Lighthouse cases, the governors there retained the authority to impose those restrictions again in the future. The court still held that those disputes were moot, and in fact, explicitly rejected the one argument that my friends have made here today, that simply because those governors retained the authority, the case was not moot. Thank you. Thank you. Judge Watford? Thank you, Chief Judge Burkia. I have a quick question for you on the merits, and I just want to get the state's view as to the scope of the Meyer-Pierce right. You described the state's time-limited closure order as not having violated that right, and I just wanted you to flesh that out. Does that mean that if the state decided, for example, that, contrary to all evidence, we think remote learning has worked out quite nicely, and we'd like to forbid all public and private school students from congregating in person on a permanent basis, I assume you would say that that would invade the scope of the right? No, Your Honor. Our position is that that sort of restriction would not create a substantive due process claim, because it doesn't infringe upon the scope of the rights guaranteed by Meyer and Pierce. The ability to send the child to the private school of your choice, and the ability to opt for a private school education that offers a particular curriculum, that isn't to say that there couldn't be other constitutional claims. For example, if California said you can't have in-person instruction at any time or at any place, maybe that gives rise to a free speech claim. Or if there were a plaintiff that actually came forward and said there are particular parts of my religious education that require in-person instruction, maybe that gives rise to a free exercise claim. And of course, there could be or statutory claims under California's laws. But that's not the claim that the plaintiffs brought here. Instead, they focused on the 14th Amendment. And indeed, as the discussion between the panel and my friend a little bit of a short time ago demonstrated, mostly focused on the right for a minimum adequate education. One last point, if I might, Your Honor, there is, of course, no indication here that California is even considering that kind of restriction. On the contrary, our preferences for in-person instruction, we deviated for that preference for a limited period of time to respond to a once-in-a-century public health crisis. And as soon as we had more information, better treatments options, better vaccines, we returned to our default mode of preferred instruction. Thank you. Thank you, Judge Nguyen. Also, assuming that this survives any witness analysis and assuming appellants can get past the to reach the Meyer-Pierce argument, despite the fact that it wasn't well presented or perfectly presented below, if we were to do that, would that result in any prejudice to the state? Well, Your Honor, I think if you ruled against us, it would result in prejudice to the state. If you ruled in our favor, obviously, that would be less prejudicial to the state. But I would note, Your Honor, the reason that the court has developed jurisdictional doctrines like from issuing unnecessary constitutional adjudications that won't have any impact on the parties before them. And I think that caution is especially warranted here, where we're talking about the Substantive Due Process Clause, an area where the Supreme Court time and again has cautioned lower courts to exercise the utmost care before breaking new ground. Thank you. All right, Judge Ikuda. Getting back to the forfeiture waiver issue, opposing counsel, as one of their arguments says, even if they forfeited that Meyer-Pierce argument below, we can reach it now anyway, because it's a purely legal issue. What's your response to that? There are two responses, Your Honor. First, of course, the court retains discretion to reach an issue. I would just note that in this context, for the reasons that I just explained in my response to Judge Wynn, I think it's especially important that a plaintiff cleanly present its claims so that the parties have the opportunities to shape their arguments and their evidence accordingly. Now, there is a portion of this claim that is, I think, legal in nature that I suppose the court could reach out and decide if it were so inclined, assuming, of course, it concludes that it has jurisdiction and this case isn't moot. But then there are factual inquiries that I think would require a remand in the district court to sort out in the first instance, unless the court agreed with our view that there's no implication of the Meyer-Pierce right at all here. Thank you. Judge Burson. Judge Burson, you're muted. With regard to the mootness question and the merits, it seems to me that since Mr. Dunn is now defining the Meyer-Pierce right as wrapping in the basic minimum education issue, his position is that private school but not public school parents have a right to an education, not simply the right to go to school in person. And you have taken the position, and the district court did, that there's absolutely no fundamental right to education for public school parents at all. It seems to me that we both will have to decide that question as an on-bank court, although it was not the issue raised in the PFR-EB, and that it is wrapped into the Meyer-Pierce analysis, and it's now being presented. So I would like to give you the opportunity briefly to explain why, in light of Pampasan and other cases, you think that there is not at least an open question of some kind with regard to the obligation of public school parents, and also private school parents, perhaps, with regard to some kind of education. Yes, Your Honor, so first as initial point, of course, the court doesn't have to decide the question if it concludes that this case is moot. Now, with respect to the public school parents, our view is that the logical implication of Rodriguez and Pampasan and Kadramas, and other cases in which the Supreme Court has rejected the assertion that the Constitution vests an individual's right to have a particular public good provided, is support for the education. Now, of course, I haven't seen this point discussed in the cases, but of course, if you're requiring children to take compulsory education, there is a liberty interest that's being impaired, and it isn't simply a question of a benefit. So why, therefore, isn't there some reciprocal obligation to provide something? Now, the way I think that feeds into the mootness question here is, what's the something, and what record do we look to for the something? And is it at least true here that there's a basic minimum education, or at least they haven't proved there isn't? But you're taking a very extreme and rigid position on this, and I'm wondering why that issue isn't at least not moot. Well, Your Honor, because I think the basis for that argument was our restrictions on in-person instruction. So the plaintiffs have not argued, and they are not arguing today, that California's current laws with respect to in-person education, or education generally, have deprived them of a basic minimum education. But more broadly, Your Honor, if the court were inclined to reach this issue, to conclude that this isn't moot, because the only challenge here was in response to these restrictions, we don't think that there is a basic minimum right to education guaranteed by the federal constitution. Of course, there are statutory and state constitutional guarantees in the state of California. And finally, Your Honor, if the court is inclined to reach this question, you could also follow the path charted by Judge Hurwitz in his footnote, assume that there is such a basic right to minimum education, but California's restrictions on in-person instruction for a limited period of time. Thank you. Thank you. Judge Ayas. Yes. Mr. Siegel, I just want to follow up on your waiver argument. Is it your understanding that the complaint does allege Myers-Pierce claim on behalf of the parents? No, Your Honor. As Judge Hurwitz laid out in some great detail, time and again, they emphasize the right to a basic minimum education or a minimum adequate education. And if you look at their moving papers, they didn't cite Pierce once at any point. They cited mere a grand total of one time in their reply in support of their temporary restraining order. And again, as Judge Ikuda noted, they expressly argued that they were not advocating for the recognition of a fundamental right to in-person instruction. So let me ask you this. You used the term waiver. But when I read the complaint, I didn't even see the claim in the complaint. And when I think about if you're going to think about waiver, they just didn't include it in the complaint. And I guess you could say they waived it. But I think that's all the more reason for this court not to reach a claim that wasn't cleanly presented to the district court. As Your Honor noted in your colloquy with my friend on the other side, it's clear that Judge Wilson didn't think that this was a claim that was for him. He didn't mention or talk about it at all. Yes. Thank you. All right. Thank you. Judge Wardlaw. Yes. Mr. Stegall. Judge Stegall had indicated to me previously that he didn't have any questions. Judge Wardlaw. All right. Thank you. So there's been a couple of contrary statements, some internally inconsistent on this. And others, the opposing parties seem somewhat inconsistent. This is just an argument. I'm sure if I went back in the papers, I'd be able to figure this out. But is it that the framework was rescinded? Or is it that the counties in which the schools were located had fewer cases, so they dropped down to different tiers, and so we're no longer required to go to school remotely? Which is it? Because it makes a difference as to whether we're looking at voluntary cessation as the exception to mootness here, or if we're looking at the reasonable expectation going forward as the exception to mootness here. So the answer, Your Honor, is both. This case became moot when the plaintiffs or the counties that the plaintiff schools were in exited the purple tier, which meant that they were allowed to open without the threat of reclosure. Right. Counsel, the reason I ask that is because that seems to have more problems as a mootness issue because of the Roman Archdiocese case versus New York. So that's the sole basis for mootness. I think you have more problems than if there's an actual subsequent rescission later. Well, Your Honor, we're perfectly happy to win on the rescission as well. I would just note that as Judge Hurwitz noted, what makes this case different from Roman Catholic Diocese is that under the framework itself, once you got out of the purple tier, the school could reopen without the threat of reclosure. The same was not true of the church or synagogue, which could find itself in Roman Catholic Diocese, which could find itself open for services one day, close the next. So this case is effectively like an expiration of an executive order like the one in Trump. I don't see that. That's not a distinction with the difference in the way that the tiers worked. And I was on a South Bay case, so I studied those tiers. And no, the way the framework worked was if the cases went back up, the framework required remote learning again. So that is true for most restrictions under the blueprint, not for schooling. If a school opened, it was allowed to remain open without the threat of reclosure. But, Your Honor, even if you don't rule for us on mootness on that ground, we are perfectly happy to win this on voluntary cessation because we rescinded the restrictions, the overall blueprint altogether in June, and then with respect to education restrictions in July of last year, and we haven't moved to reinstate those restrictions. So either the court can conclude this was moot under its own terms, like the executive order in Trump v. Hawaii, or you can say this is within the question of voluntary cessation, but there's no voluntary cessation exception here because there isn't this reasonable expectation that we'll return. All right. Thank you. Judge McKeown. I'm playing off of the final framework that was issued. One of the arguments is that this changing landscape and changing the goalposts a la Tandon means that the government doesn't get the benefit of the good faith presumption. And I would appreciate your comments on how that figures in here, given these various changes, one rescission and then several changes. Your Honor, I think we are still entitled to that good faith presumption because here in California's restrictions, its framework is very clear. Once a school got out of or was in a county that got out of tier one, it was allowed to open without the threat of reclosure. It's true that during the course of the 2020-2021 school year, we loosened our restrictions, but that made it easier for schools to reopen in January and in March of 2021. But Your Honor, even setting aside that presumption of good faith in favor of the government, as I mentioned in my colloquy with one of your colleagues earlier, this court in Rosebrook looked to five factors in assessing whether other challenges to government actions were moot. At least four of the five factors are present here, including, as I mentioned, that the rescission has been made in broad and unequivocal language. And here the agency officials have been engaged in conduct similar to that that was challenged by the plaintiffs in the first place. Thank you. Thank you. Mr. Siegel, do you agree that the plaintiffs here have not established a tribal issue that their children were denied a basic minimum education? We would agree with that, Your Honor. Even if you assume, looking at all the evidence that they have introduced, as Judge Hurwitz noted, as I think both members of the majority of the panel noted, and as the district court noted, they haven't demonstrated that assuming that there is a right to a basic minimum education, and we disagree that there is, but if the court were to assume that, they haven't demonstrated that that was violated here. What about the declaration submitted by, I think it was Jesse Patria. He states that his autistic son received a few handouts and often finished his schoolwork within 30 to 45 minutes every day. On most days, the instruction was nothing more than a check-in where his teacher would say hello and talk to students briefly. And they go on to say, had our son attended school in person, he would have received a minimum of seven additional hours of education every day. And I'm just, what I would like to hear from you, can we say as a matter of law, if we get to this, can we say as a matter of law that this child received a basic minimum education? So three quick responses, your honor. I think that you can, well, I guess our initial position is that there is no right to a basic minimum education. I think secondly, the court could say that as a matter of constitutional law. Now the plaintiffs had claims under the Civil Rights Act, under the IDEA, they have abandoned those claims on appeal. And the third and final point here, your honor, is that those declarations were authored in August of 2020. California had adopted a cohort guidance for the 2020-2021 school year that allowed for in-person instruction to happen for certain specialized individuals. And that may include individuals with learning disabilities. So we would need to know if we ever got back there, and we don't think there is any reason for the court to get back there, but if we got back there, whether that student was able to take advantage of that cohort guidance. Thank you. Thank you very much. Ms. Schiegel, you have about five minutes left, so I'll let you use that time as you wish. Sure. I only have a few small points that I'd like to make, your honor. First, during my friend's presentation, he argued that the standard under voluntary cessation is that it's absolutely clear that we won't impose the restrictions again. That's not right. The relevant standard is whether it's absolutely clear that there's no reasonable expectation that the government will return to these restrictions. And for the reasons that we've been discussing today, there's no such expectation here. Second, your honor, my friends briefly invoked the fact that the governor still has the state of emergency in effect. And I think that's the principal basis on which they distinguish cases like Boston Bit Labs or like Lighthouse. But if I might just explain, the governor has kept the state of emergency in effect because it allows him to issue other orders to help us fight COVID-19 without having to restrict in-person instruction. And to provide just one letter, plaintiff cited to executive order N-21-21, which the governor issued last November. Well, that executive order extended a prior executive order that allowed out of state medical personnel to offer services in this state in anticipation of the upcoming surge in COVID-19 hospitalizations that we've now seen over the last few months. It's because we can take actions like that, that we don't have to return to the restrictions on in-person instruction here. And third, and finally, your honors, in response to Judge Nelson's question on the capable of repetition exception, if we prevail on the voluntary cessation argument, it will be because the court concludes that there's no reasonable expectation that the state will reimpose these restrictions again in the future. That's the same standard that is used for at least the capable of repetition prong of that portion of the test. And Chief Judge Merguia, if there are no further questions, we'd respectfully ask the court to either dismiss the appeal as moot or to affirm the judgment of the district court. Judge Merguia, may we ask other questions? Certainly, Judge Burson. If we were to get to the minimum basic education question either or both as part of the public school inquiry or as part of the public school inquiry, because it's now been articulated in that term, would the case be moot or at least have to be reconsidered for a different reason, which is that leaving aside closure or non-closure, as I understand it, during the 2021 year, when there were largely closures, the whole mode of education was quite different than it was in the spring of 2020 when the schools were just shut down and no one really knew how to provide virtual education and there was really no resources to do it. So if we were to get to that question, wouldn't we have a sort of second level mootness question, which is what does school closure actually impact with regard to basic minimum education if done properly or better than it was in the spring of 2020? Yes, Your Honor, I think that's correct and that would be a very fact-intensive inquiry that would have to look at the circumstances of the plaintiff's individual cases. Some attended or sent their children to schools that had received waivers under the guidance and allowed for in-person instruction for elementary schools. Others may have been able to have in-person education and the state shifted its guidelines as we learned more about the threat of COVID-19 or relative lack thereof during the 2020-2021 school year. I think that's all the more reason why this court should not reach the merits of either the public school plaintiff's claims or the private school plaintiff's claims. There's one minute left if anybody else has an additional question. Otherwise, we'll conclude with the state's present portion of this argument. Mr. Siegel, thank you very much. Thank you, Your Honor. Mr. Dunn, I think you have three minutes. Appreciate the extra time, Your Honor. We'll get right to it. We've belabored mootness quite a bit, just one small thing on that. In the Lighthouse case that the state cites, we just note the court made the point there that the Supreme Court had issued binding presidential decisions in Diocese of Brooklyn and Tandon that more or less prevented the type of church closures that issue there. That clearly is not the case here. There is not a Supreme Court decision that is going to constrain the state if this court moots the case and kicks us out. Second point, going to Judge Wardlaw's question, we agree with the state that it was both that the state was rescinding and changing orders and that we were moving out of tiers. For example, Hackett's private school was not allowed to open. Then the state changed the regulation in January to make it easier to open. At that point, his school was finally able to open in February because they had essentially made it easier to open in the purple tier for elementary schools. It is both, which I think both feeds it into Diocese of Brooklyn and shows that this was an instance where the defendants were in total control over whether the schools would open or close. On the forfeiture point, I just want to, I think, focus on something Judge Pius has been getting at, which I understand the question. The claim here, it is a substantive due process claim, and that claim encompasses really everything that our plaintiffs are raising. This court and the Supreme Court have taken that sort of broader view of what a claim is. For example, in the Young v. Hawaii case, where there was a Second Amendment claim and there was an issue of whether the plaintiff had forfeited the as-applied claim and had only asserted the facial claim, it was clear that the plaintiff in that case had not asserted an as-applied claim and hadn't even done it until in bank proceedings. Yet the court recognized it had discretion to hear the claim. It ultimately decided not to because the plaintiff had had seven years in which to raise it, but the claim was a Second Amendment claim. In Yee v. Escondido, a case that Judge Pius and the Supreme Court had a similar idea. The court had said, look, they raised a takings claim under the Fifth Amendment, and there was a physical taking and a regulatory taking, and they didn't clearly preserve the regulatory taking, but it was encompassed. Same here, we raised a substantive due process claim. Our Meyer-Pierce claim is within that. Now, the court has discretion, so the court is going to have to decide whether to exercise its discretion. In our view, this is a pure legal question. Really, all the court needs to decide is whether or not the right to send your child to a private school in person, if you believe that that is the only place that your child can get a basic minimum education, if that falls within the scope of the Meyer-Pierce right. Everything else can be resolved on remand. And I would point out, the state was not prejudiced in any way, shape, or form by our focus on this in the opening brief. The state did not say in its petition for in bank that it would have introduced additional evidence, and in its opposition, or it's in support of summary judgment, it said that the record was fully provided in terms of the state's rationale. So we don't think there's any prejudice to the state from reaching that question. Thank you, Your Honor. Thank you very much, Mr. Dunn. I really want to just take a moment to thank both the attorneys for their excellent presentations here today during this en banc oral argument. The case of Matthew Brock versus Gavin Newsom is now submitted, and we will be adjourned. Thank you, Your Honor. This court for this session stands adjourned.
judges: MURGUIA, McKEOWN, WARDLAW, GOULD, PAEZ, BERZON, IKUTA, NGUYEN, WATFORD, NELSON, BRESS